UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL H.,[1]<br><br>                              Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY, Acting Commissioner of Social Security,[2]<br><br>                              Defendant. | Case No.:  22cv977-MSB<br><br>**ORDER REVERSING DECISION OF COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

On July 1, 2022, Plaintiff Michael H. ("Plaintiff") filed a civil Complaint against Defendant Commissioner of Social Security (the "Commissioner") seeking judicial review of Defendant's denial of disability benefits under the Social Security Act.  (ECF No. 1.) Based on all parties' consent (see ECF Nos. 3 and 22), this case is before the undersigned

---

[1] Pursuant to Civil Local Rule 7.1(e)(6)(b), "[o]pinions by the Court in [Social Security cases under 42 U.S.C. § 405(g)] will refer to any non-government parties by using only their first name and last initial."

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  See Commissioner SSA, https://www.ssa.gov/agency/commissioner/ (last visited September 23, 2024).  Accordingly, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this lawsuit.  See Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending.  The officer's successor is automatically substituted as a party").

1

as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Now pending before the Court is the parties' Joint Motion for Judicial Review ("Joint Motion"). (ECF No. 19 ("J. Mot.").) The Court has carefully reviewed the Joint Motion, the Administrative Record ("AR") [ECF No. 12], and the Complaint [ECF No. 1]. For the reasons set forth below, the Court **ORDERS** that judgment be entered **REVERSING** the Commissioner's decision and **REMANDING** this matter for further administrative proceedings consistent with this Order.

## I.   PROCEDURAL HISTORY

On October 5, 2020, Plaintiff applied for Title II Social Security Disability Insurance benefits. (AR 223-24.) The Commissioner denied the application initially on February 25, 2021, and again upon reconsideration on June 2, 2021. (AR 79-92, 94-115.) On January 27, 2022, Administrative Law Judge ("ALJ") James Delphey held an oral hearing during which Plaintiff was represented by counsel. (AR 34-78.) In a written decision dated March 30, 2022, ALJ Delphey found that Plaintiff had not been under a disability since January 26, 2020, the alleged onset date of disability. (AR 15-29.)

On March 30, 2022, Plaintiff requested review of the ALJ's decision by the Appeals Council, but it was denied on May 5, 2022, making ALJ Delphey's decision the final decision of the Commissioner. (AR 1-6); see also, 42 U.S.C. § 405(h). Plaintiff timely filed the instant civil action. (ECF No. 1.)

## II.   SUMMARY OF THE ALJ'S FINDINGS

The ALJ followed the Commissioner's five-step sequential evaluation process. See 20 C.F.R. § 404.1520. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date, January 26, 2020. (AR 17.) At step two, the ALJ found that Plaintiff had the following severe impairments that significantly limit his ability to perform basic work activities: adjustment disorder with anxiety and depression, post-traumatic stress disorder ("PTSD"), gastro esophageal reflux disease ("GERD"), irritable bowel syndrome ("IBS"), and cervical degenerative disc disease (20 CFR § 404.1520(c)). (AR 17-18.) At step three, the ALJ found that Plaintiff did not have

an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the Commissioner's Listing of Impairments. (AR 18.)

Because the ALJ found Plaintiff's impairments did not amount to a listed impairment, the ALJ then assessed Plaintiff's residual functional capacity ("RFC") to perform work. (AR 20.) The ALJ determined:

> [C]laimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he can frequently climb ramps or stairs; can occasionally climb ladders, ropes, or scaffolds; can frequently balance, stoop, kneel, crouch, or crawl; can frequently reach overhead bilaterally without any other reaching limitations; he requires convenient restroom access; he is limited to work involving simple, routine tasks with only occasional interactions with supervisors and coworkers and no interaction with the public;
> and he requires a stable work environment and work routine.

(AR 20-21.) At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 27.) Plaintiff's past relevant work includes electromechanical equipment repairer and biomechanical equipment technician. (Id.) The ALJ relied on the vocational expert's testimony that the mental limitations in the RFC would eliminate all Plaintiff's past relevant work. (Id.) At step five, the ALJ found that, after considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform. (Id.) The vocational expert identified several representative occupations such as kitchen helper, laundry worker, ampoule filler, produce sorter, marker II, and small parts assembler. (Id. at 28.) As a result, the ALJ determined that Plaintiff could make an adjustment to other work and, therefore, is not disabled. (Id.)

### III.   DISPUTED ISSUES

Plaintiff briefed three issues as grounds for reversal:

1. Whether the ALJ properly formulated the RFC;
2. Whether the ALJ properly evaluated Dr. Yoo's opinion under 20 C.F.R. § 404.1520c;

3. Whether the mental RFC is supported by substantial evidence.

However, after reviewing the parties' arguments and the AR, the Court determined that the following three issues are more appropriate: (1) whether the ALJ properly evaluated Dr. Yoo's opinion; (2) whether the ALJ properly formulated the RFC; and (3) whether the ALJ properly considered Plaintiff's subjective symptom testimony.

## IV.   STANDARD OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of the Commissioner's final decision. See 42 U.S.C § 405(g). The scope of judicial review is limited, and the denial of benefits will only be disturbed if it is not supported by substantial evidence or contains a legal error. Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018). "Substantial evidence" is a "'term of art' used throughout administrative law to describe how courts are to review agency factfinding." Biestek v. Berryhill, 587 U.S. 97, 102 (2019) (quoting T-Mobile South, LLC v. Roswell, 574 U.S. 293, 301 (2015)). The Supreme Court has said substantial evidence means "more than a mere scintilla," but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts. See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001). Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in analyzing evidence and reaching a decision. See Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). The reviewing court may enter a "judgment affirming, modifying, or reversing" the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the case to the Social Security Administration for further proceedings. Id. However, the reviewing court "may not reverse an ALJ's decision on

account of an error that is harmless." Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015) (quoting Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012)).

## V. DISCUSSION

### A. Whether the ALJ Properly Evaluated Dr. Yoo's Opinion

#### 1. Summary of the parties' arguments

Plaintiff argues that both the ALJ's supportability and consistency analyses were deficient when assessing the persuasiveness of Dr. Yoo's opinion. (J. Mot. at 12-13.) He argues that the ALJ erroneously determined that his daily activities, Xanax prescription, lack of inpatient or outpatient recommendations, and orientation were inconsistent with Dr. Yoo's opinion. (Id. at 13-15.) The ALJ did not explain the reason he found these factors to be inconsistent with Dr. Yoo's report. (Id.) On the contrary, Plaintiff contends that the medical opinion is consistent with the record. (Id. at 15-16.) He explains that Dr. Sfera's and Dr. Salvatore's opinions supported and were consistent with Dr. Yoo's. (Id.)

The Commissioner argues that the ALJ reasonably found Dr. Yoo's opinion was unpersuasive. (Id. at 16.) According to the Commissioner, the ALJ properly decided that Dr. Yoo's opinion was not supported by medical evidence because he only recited Plaintiff's subjective complaints. (Id. at 17.) The ALJ further properly determined that Dr. Yoo's opinion was inconsistent with the medical evidence of record and Plaintiff's "virtually normal activities of daily living." (Id. at 17-18.) The Commissioner argues that Plaintiff only offers his own alternative interpretation of the evidence and that if evidence supports more than one rational interpretation, the Court must defer to the Commissioner. (Id. at 18.) The Commissioner asserts that substantial evidence is a "very low threshold" and that the ALJ's reasoning need only be a rational interpretation of the evidence. (Id.)

#### 2. Applicable law

Under current regulations, the ALJ must evaluate the persuasiveness of any medical opinion using the following factors: supportability, consistency, the relationship

between the source and the claimant, the source's specialization, and other factors such as the source's knowledge of other evidence and whether there was subsequently submitted evidence.  20 C.F.R. § 404.1520c(c)(1)–(5).  The two most important factors are supportability and consistency.  Id. § 404.1520c(b)(2).  "Supportability" measures the degree to which objective medical evidence and supporting explanations buttress a medical finding.  Id. §§ 404.1520c(c)(1); 416.920c(c)(1).  "Consistency" is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources in the record.  Id. §§ 404.1520c(c)(2); 416.920c(c)(2).  The more relevant the objective evidence and supporting explanations are to support the medical source, and the more consistent the source is with other evidence in the record, the more persuasive the medical opinion will be.  See Zhu v. Comm'r of Soc. Sec., No. 20-3180, 2021 WL 2794533, at *6 (10th Cir. July 6, 2021).

The regulations provide that "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."  Woods v. Kijakazi, 32 F. 4th 785, 787 (9th Cir. 2022).  ALJs must address how they considered the consistency and supportability factors in sufficient detail to allow a reviewing court to determine whether that reasoning is supported by substantial evidence.  Titus L.S. v. Saul, No. 20cv04825-AFM, 2021 WL 275927, at *7 (C.D. Cal. Jan. 26, 2021) (citing Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020)).  The Ninth Circuit has indicated that ALJs should attempt to use these terms "with precision."  Woods, 32 F.4th at 793 n.4.

**3. Analysis**

When assessing the persuasiveness of Dr. Yoo's opinion, the ALJ only discussed the supportability and consistency factors.  The ALJ summarizes Dr. Yoo's opinion below:

> Ji Hyung Yoo, M.D., a behavioral health services physician at Kaiser Permanente, indicated that the claimant had moderate limitation in the ability to remember locations and work like procedures and moderate limitation in understanding and remembering detailed instructions.  He noted moderate limitation in the ability to carry out detailed instructions and maintain attention and concentration for extended periods.  Dr. Yoo noted moderate limitation in the claimant's ability to work in coordination with her proximity to others without being distracted by

them and moderate limitation making simple work-related decisions.  He noted marked limitation in the claimant's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms.  Dr. Yoo assessed the claimant with moderate limitation in the ability to respond appropriately to changes in the work setting and moderate limitation in the ability to set realistic goals or make plans independently of others.  He assessed the claimant with marked limitation in the ability to tolerate normal levels of stress.  In addition, he indicated that the claimant's impairments interfere with his ability to work on a regular and sustained basis at least 20 percent of the time (3F).

(AR 25.)  For the first factor, the Commissioner argues that the ALJ properly concluded that Dr. Yoo's opinion was not supported by objective evidence and supporting explanations.  (J. Mot. at 17.)  The ALJ's discussion on supportability is brief.  He states that Dr. Yoo's opinions are "only . . . supported by the claimant's subjective complaints . . . ."  (AR 25.)  To the extent the ALJ finds that Dr. Yoo's opinion is not supported because it is only based on claimant's subjective complaints, the Court agrees with Plaintiff that his complaints may be sufficient to support Dr. Yoo's opinions, especially when assessing psychiatric conditions.  See Berry v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017) (finding that a doctor's reliance on the claimant's self-reported symptoms is not a legitimate reason to reject his opinion).  Defendant does nothing to rebut this argument other than speculate on how Dr. Yoo conducted his assessment.  (J. Mot. at 17.)  However, the ALJ does not describe any deficiencies of Dr. Yoo's method and how it may have lacked support.  Thus, the ALJ's supportability determination regarding Dr. Yoo's opinion is not supported by substantial evidence.

On the second factor, the ALJ's determination that Dr. Yoo's opinion was inconsistent with the rest of the record must also be supported by substantial evidence.  The ALJ explains that Dr. Yoo's opinion was inconsistent with (1) Plaintiff's "virtually normal" daily activities; (2) the record showing that Plaintiff should only take Xanax "as needed" for his anxiety; (3) the fact that no invasive inpatient or outpatient recommendations were rendered; and (4) psychiatric examinations that showed

Plaintiff was "oriented in all spheres with a normal mood and affect, which suggests that his medication is effective in treating his symptoms." (AR 25-26.)

### a. Inconsistencies with medical evidence

The ALJ discusses three types of medical evidence that were inconsistent with Dr. Yoo's opinion, namely, taking Xanax as needed, no invasive inpatient or outpatient recommendations, and psychiatric examinations that showed Plaintiff had normal mood and affect. (AR 25.) The Commissioner seems to summarize these other factors as "psychiatric examinations [that] showed largely unremarkable findings." (J. Mot. at 18.)

The ALJ does not explain how taking Xanax as needed conflicts with Dr. Yoo's opinion. The only psychological opinion that the ALJ found to be "somewhat persuasive" was that of the State agency psychological consultants. (AR 23-24.) He explained that their findings for mild limitations were consistent with portions of the medical evidence but found that there were some greater mental limitations based on Plaintiff's subjective symptom allegations (though he did not specify which symptoms.) (Id.) The ALJ explains that a "moderate limitation in [interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself are] consistent with treatment notes that indicated a prescription for Xanax 'as needed', which suggests severe anxiety that would affect social functioning, concentration and self-management." (Id. at 24 (referring to AR 105).) Because the ALJ describes how Plaintiff's use of Xanax suggests "severe anxiety" that support moderate limitations affecting his "social functioning, concentration and self-management[,]" it is unclear how that cuts against Dr. Yoo's findings, who noted moderate limitations in maintaining concentration, ability to work in coordination with others, making simple work-related decisions, and set realistic goals or make plans independently of others. (AR 24-25.) The ALJ's inconsistent reasoning here undermines his determination that Dr. Yoo's opinion was completely unpersuasive.

Similarly, the ALJ fails to explain how Plaintiff's lack of inpatient or outpatient recommendations and "normal mood and affect" are inconsistent with Dr. Yoo's

opinion. As Plaintiff points out, inpatient hospitalization is not required to be disabled, and medication is not conservative treatment. See Duarte v. Berryhill, No. 16CV2654 W (BGS), 2018 WL 785819, at *9 (S.D. Cal. Feb. 8, 2018), report and recommendation adopted, No. 16-CV-2654 W (BGS), 2018 WL 1108783 (S.D. Cal. Mar. 1, 2018) (listing cases). While the ALJ concludes that Plaintiff's normal mood and affect suggests his medication is effective in treating his symptoms [AR 26], courts have often concluded that an ALJ errs when improperly equating stability with functionality. See Kluthe v. Berryhill, No. 1:16-CV-00742-JLT, 2018 WL 775298, at *9 (E.D. Cal. Feb. 8, 2018). Since psychiatric examinations are relatively limited interactions that may not accurately reflect a claimant's ability to work an eight-hour day, such cherry-picked examples of brief symptom-free periods are also insufficient to deny a claimant's disability. See Overton v. Berryhill, No. 17cv25-BEN, 2017 WL 5159550, at *1, *18 (S.D. Cal. Nov. 16, 2017) report and recommendation adopted, 2018 WL 1561315 (S.D. Cal. Mar. 27, 2018) (finding the ALJ erred when relying on cherry-picked segments of recreational therapy notes and ignoring other segments of the same notes).

Although the opposition emphasizes that the substantial evidence standard is a "very low threshold" (J. Mot. at 18), it fails to provide even the slightest rational interpretation of the evidence that would support the ALJ's findings. The ALJ erred when he failed to explain how each factor is inconsistent with Dr. Yoo's opinion. See Titus L.S., 2021 WL 275927, at *7. The ALJ seems to only provide conclusive statements, making it difficult for the Court to find a reasonable interpretation of the evidence that supports his findings, especially since the ALJ contradicts himself in finding that Plaintiff has moderate limitations consistent with Dr. Yoo's opinion. Accordingly, the Court finds that the ALJ erred in inconsistently applying evidence and failing to provide adequate reasons to disregard Dr. Yoo's opinion.

### b. Inconsistencies with daily activities

In a similar vein, the ALJ does not explain how Plaintiff's daily activities are inconsistent with Dr. Yoo's opinion. In explaining why Dr. Sfera's opinion was not

persuasive, the ALJ described Plaintiff's daily activities, which include "cooking, cleaning, caring for pets, caring for children, and driving a motor vehicle as well as watching television the majority of the day and interacting on Facebook." (AR 25.) The Commissioner argues that the ALJ reasonably concluded that these "largely normal" daily activities were inconsistent with marked limitations. (J. Mot. at 18.) However, the ALJ and the Commissioner both omit any explanation for <u>why</u> these are inconsistent with Dr. Yoo's opinion.

The absence of any explanation is concerning, given that courts "have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." <u>Garrison v. Colvin</u>, 759 F.3d 995, 1016 (9th Cir. 2014). While this caution is typically applied when assessing a claimant's subjective symptom testimony, the ALJ must still carefully consider how daily activities are inconsistent with Plaintiff's abilities to function in a work setting, as opposed to how one functions in a more familiar and comfortable environment such as his home or around his family. <u>See</u> <u>Pate-Fires v. Astrue</u>, 564 F.3d 935, 947 (8th Cir. 2009) (finding that minimal daily activities, such as watching TV, cooking, cleaning, and shopping for groceries are often consistent with chronic mental disability) (citing <u>Hutsell v. Massanari</u>, 259 F.3d 707, 713 (8th Cir. 2009)).

Although the ALJ is tasked with interpreting and weighing the facts, the Court is unable to guess at the ALJ's reasoning. <u>See</u> <u>Robert D. v. Kijakazi</u>, No. 20CV2132-AJB (MSB), 2021 WL 5905734, at *4 (S.D. Cal. Dec. 14, 2021), <u>report and recommendation adopted,</u> No. 20-CV-02132-AJB-MSB, 2022 WL 62908 (S.D. Cal. Jan. 6, 2022) (listing cases). The ALJ's lack of explanation here is error. Consequently, Plaintiff's daily activities do not constitute as substantial evidence that supports the ALJ's finding that Dr. Yoo's opinion is unpersuasive.

//

### c. Whether Dr. Yoo's opinion is consistent with the record

Finally, Plaintiff argues that Dr. Yoo's opinion is consistent with Dr. Salvatore and Dr. Sfera. However, Plaintiff does not acknowledge that the ALJ found these opinions unpersuasive, and Plaintiff does not challenge these findings. The Court does not give weight to these opinions either, but as discussed *supra*, Dr. Yoo's opinion seems at least partially consistent with the ALJ's analysis of Plaintiff's Xanax prescription and subjective symptom testimony when discussing the State agency psychological consultants' opinion.

### d. Conclusion

Ultimately, the ALJ's assessment of Dr. Yoo's opinion lacks substantial evidence. The ALJ's failure to expound on the reasons why certain factors diminished Dr. Yoo's opinion hinders the Court's ability to assess whether the ALJ's decision was supported by substantial evidence. Most notably, the ALJ's surface level discussion highlighted inconsistencies in his overall analysis of the record. This error is not harmless because a different finding could have resulted in a more restrictive RFC that could have changed the outcome of Plaintiff's disability determination. See Carmickle v. Comm'r of Soc. Sec. Admin., 553 F.3d 1155, 1162 (9th Cir. 2008).

## B. Whether the ALJ Properly Formulated the RFC

### 1. Summary of the parties' arguments

Both of Plaintiff's first and third arguments claim the ALJ's formulation of the RFC was flawed. Plaintiff's first argument focuses on limitations regarding his IBS diagnosis and the third argument is a broader critique that the RFC is not reflective of all his mental limitations, specifically his limitations dealing with stress and work attendance. (J. Mot. at 4-9; 21-24.) The Court will address both in this section.

### a. Plaintiff's IBS limitations

Plaintiff argues that the ALJ failed to properly formulate his RFC with respect to one of his limitations. (Id. at 4-6.) He argues that the ALJ's determination that he requires "convenient restroom access" is flawed because "convenient" is undefined and

the vocational expert did not explain how he understood the term. (Id. at 5.) Indeed, the vocational expert commented that restroom convenience "can be argued both ways," which suggests that he thought the term was open to interpretation. (Id. at 9 (citing AR 69).) Plaintiff further argues that "convenient restroom access" does not account for the actual use of the restroom, which he believes is a distinct limitation. (Id.)

The Commissioner argues that substantial evidence supports the ALJ's RFC. (Id. at 6.) According to the Commissioner, the ALJ properly accounted for limitations that were supported by the record. (Id. at 6-7.) The ALJ assessed and reasonably concluded Plaintiff's subjective testimony about his bathroom use was not consistent with the objective medical evidence. (Id.) The Commissioner further refutes "convenient restroom access" is ambiguous because the vocational expert was able to provide a specific response to the ALJ's hypothetical, and thus, Plaintiff's speculation on the term "convenient" cannot undermine the vocational expert's testimony. (Id. at 8.)

### b. Plaintiff's mental limitations

Plaintiff believes the RFC is also improper because the section regarding his mental limitations lacks support. (Id. at 23.) Although the ALJ found the examining doctors' opinions to not be persuasive, those doctors concluded Plaintiff had more limitations than what was reflected in the RFC, which were not specifically rejected by the ALJ. (Id. at 22.)

The Commissioner argues that the RFC properly accounts for the limitations that were supported by the record because the ALJ reasonably rejected Plaintiff's subjective complaints and reasonably discounted the related medical opinions. (Id. 24.)

### 2. Applicable law

RFC is a claimant's ability to do work-related activities on a sustained basis (i.e., eight hours a day, five days per week). Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). Thus, it represents the maximum amount of work a claimant can perform despite their

limitations, based on all relevant evidence in the record. See 20 C.F.R. § 416.945(a)(1); 20 C.F.R. § 404.1545(a)(1). In making this finding, the ALJ must consider all the claimant's medically determinable impairments, including those that are non-severe. See 20 C.F.R. § 404.1545(a)(2); see also Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting SSR 96-8P, 1996 WL 374184, at *5). Additionally, the Ninth Circuit has held that the agency must consider the claimant's testimony regarding their capabilities, as well as all relevant evidence, including medical records and lay evidence. Chaudhry v. Astrue, 688 F.3d 661, 670 (9th Cir. 2012); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006); SSR 96-8P, 1996 WL 374184, at *5. Generally, "an RFC that fails to take into account a claimant's limitations is defective." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009); see also Samples v. Comm'r Soc. Sec. Admin., 466 Fed. App'x 584, 586 (9th Cir. 2012). However, the RFC need not quote every finding, so long as it generally captures the limitations in the medical opinion. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).

### 3. Analysis

#### a. Plaintiff's IBS limitations

Although Plaintiff frames his argument as a formulation issue with the RFC, the true crux of the issue stems from whether the ALJ properly rejected Plaintiff's subjective symptom testimony. Plaintiff's argument boils down to two points, both of which rely on his symptom testimony: (1) the ALJ's use of "convenient restroom access" is ambiguous; and (2) the RFC does not account for Plaintiff's true limitations regarding his IBS.

In making the second point, Plaintiff states that the "ALJ did not specifically reject [his] testimony regarding the need to use the restroom with some frequency." (J. Mot. at 6.) However, the Commissioner primarily argues that the ALJ reasonably rejected this testimony. (J. Mot. at 7.) The Court cannot assess whether the ALJ appropriately accounted for Plaintiff's IBS limitations without first assessing whether Plaintiff's subjective symptom testimony was properly considered. See Chaudhry, 688 F.3d at

670. Indeed, an ALJ's failure to properly consider Plaintiff's subjective symptom testimony may independently be reversible error. See Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015) (finding that an ALJ's failure to identify and explain why a claimant's subjective testimony is not credible constitutes reversible error because the reviewing court cannot determine if the ALJ's decision was supported by substantial evidence).

Plaintiff's first point, though subtler, also relies on whether the ALJ properly rejected his symptom testimony. An ALJ's use of an ambiguous or vague term when formulating the RFC is not necessarily reversible error by itself. If the ALJ has properly evaluated Plaintiff's symptom testimony and other evidence in the record such that the meaning of an ambiguous or vague term can be gleaned, then substantial evidence will have supported the ALJ's finding.

"Convenient restroom access" is facially vague and ambiguous. At the hearing, when the vocational expert was asked whether Plaintiff's former work as a biomechanical tech would allow for convenient restroom access, the vocational expert acknowledged that his answer depends on how convenient restroom access is interpreted. (See AR 68.) In support of this argument, Plaintiff cites Clark v. Kijakazi, Case No. 2:22-cv-01336 AC, 2023 WL 6049890 (E.D. Cal. Sept. 15, 2023) and McMichael v. Astrue, Civil No. 09–840–HA, 2010 WL 3522377, at *4 (D. Or. Sept. 8, 2010). Neither of these cases support a broad rule that an ambiguous or vague term in an RFC may independently constitute reversible error. In Clark, the court found that the portion of the RFC that refers to "occasional twisting" was not supported by substantial evidence because there was no medical opinion regarding the range of motion in plaintiff's neck and the ALJ could not make his own medical determination based on limited notes and plaintiff's daily activities. Clark, 2023 WL 6049890, at *5. While the court concluded that the term "twisting" was vague and ambiguous, the lack of medical record was the definitive reason the court found the RFC was not supported by substantial evidence. Id. Had the record been more developed, the meaning of "occasional twisting" could

have been determined and supported by evidence.  Id.  The court in McMichael found that the vocational expert's testimony could not constitute substantial evidence because of multiple layers of ambiguity and confusion.  McMichael, 2010 WL 3522377, at *4.  The vocational expert was posed a question that included several ambiguities and then was essentially tasked to determine an RFC on her own.  Id.

Here, the question posed to the vocational expert was similar to the first line of questioning in McMichael because the term "convenient restroom access" did not specify what such access would entail and thus, it was unclear whether the jobs identified would actually accommodate Plaintiff's IBS diagnosis.  However, unlike McMichael, this ambiguity was not "fatal."  Id.  Much like Clark, if the record was adequately developed, then the definition of "convenient restroom access" could be determined.  And, if the definition could be ascertained, then the Court would be able to evaluate if the jobs identified by the vocational expert could accommodate Plaintiff's limitations.

The Commissioner argues that substantial evidence supports the convenient restroom access RFC because the ALJ reasonably rejected Plaintiff's subjective testimony about the severity of his IBS symptoms.  However, Plaintiff's subjective symptom testimony is an underlying dispute that the Court will address *infra*.  If the ALJ properly rejected Plaintiff's subjective symptom testimony, then "convenient restroom access" would only represent a minimal limitation where the simple presence of a nearby restroom would be sufficient, and the vocational expert's testimony would not need to be reevaluated.  On the other hand, if the ALJ failed to properly assess Plaintiff's testimony, then the RFC pertaining to his IBS symptoms would not be supported by substantial evidence.  See Clark, 2023 WL 6049890, at *5; see also Chaudhry, 688 F.3d at 670.

### b. Plaintiff's mental limitations

For his final argument, Plaintiff relies on the opinions of doctors that the ALJ determined to be unpersuasive.  However, Plaintiff has only challenged the ALJ's

determination of Dr. Yoo's opinion.  Although Plaintiff's decision not to challenge Dr. Sfera and Dr. Salvatore's opinions is odd, the Court agrees with the Commissioner that Plaintiff has forfeited the ability to seek review as to their opinions.  See Schwarz v. Kijakazi, No. 22-35792, 2023 WL 8271968, at *1 (9th Cir. Nov. 30, 2023) (citing Freedom from Religion Found., Inc. v. Chino Valley Unified Sch. Dist. Bd. of Educ., 896 F.3d 1132, 1152 (9th Cir. 2018)).  Instead, Plaintiff argues that the ALJ did not specifically reject Dr. Sfera and Dr. Salvatore's opinions with respect to his handling stress and maintaining attendance—yet he does not provide legal authority that requires the ALJ to make such a specific finding.  (See J. Mot. at 25.)  Indeed, the ALJ found their opinions to be unpersuasive in their entirety, not just the portions he discussed.  (AR 24-25.)  Accordingly, the Court does not find that the RFC inadequately reflects limitations supported only by Dr. Sfera and Dr. Salvatore's opinions.  The Court has already tasked the ALJ with reassessing Dr. Yoo's opinion.  If the ALJ's revised assessment results in a different outcome, the ALJ may or may not need to amend the RFC accordingly.  See Chaudhry, 688 F.3d at 670.

### 4. Conclusion

The Court does not find that the ALJ's formulation of the RFC was flawed for the reasons Plaintiff claims it to be.  Although the Court finds that the RFC's inclusion of the term "convenient restroom access" is vague and ambiguous, it still may be supported by substantial evidence if the ALJ properly assessed Plaintiff's subjective symptom testimony.  Similarly, the portion of the RFC that refers to Plaintiff's mental health limitations may also be supported by substantial evidence once the ALJ properly assesses Dr. Yoo's opinion.

### C. Whether the ALJ Properly Considered Plaintiff's Subjective Symptom Testimony

As discussed above, although the parties do not explicitly argue whether the ALJ properly assessed Plaintiff's subjective testimony regarding his IBS symptoms, there is a clear disagreement on this matter.  (See J. Mot. at 6-7 (Plaintiff states that the ALJ did

not specifically reject his testimony and the Commissioner argues that the ALJ reasonably rejected his testimony).)

### 1. Applicable Law

The ALJ must follow a two-step analysis to determine whether a claimant's allegations regarding subjective pain or symptoms are credible. See Johnson v. Kijakazi, No. 19-17359, 2022 WL 1553259, at *1 (9th Cir. May 17, 2022); Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009); Lingenfelter v. Astrue, 504 F.3d 1028, 1035–36 (9th Cir. 2007).

First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged." Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017) (quoting Garrison, 759 F.3d at 1014–15). The claimant is not required to show that an underlying impairment could reasonably be expected to cause the severity of the pain alleged, but only that it could have reasonably caused some degree of pain. Vasquez, 572 F.3d at 591 (citing Lingenfelter, 504 F.3d at 1036).

Second, if the claimant meets the first step and there is no evidence of malingering, then the ALJ may reject the claimant's statements about the severity of his symptoms "only by offering specific, clear and convincing reasons for doing so." Trevizo, 871 F.3d at 678 (quoting Garrison, 759 F.3d at 1014–15). "The clear and convincing standard is the most demanding required in Social Security cases." Revels v. Berryhill, 874 F.3d 648, 655 (quoting Garrison, 759 F.3d at 1014–15). General findings are insufficient, and the ALJ must identify which specific pain and symptom statements are being discounted and what evidence undermines those claims. See Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citing Treichler v. Comm'r Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014)); Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005).

"[B]ecause [certain] symptoms . . . are subjective and difficult to quantify," the ALJ will consider "all of the evidence presented," including information about the claimant's prior work record, statements about their symptoms, evidence submitted by their

medical sources, and observations by the Agency's employees and other persons. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p. In addition to objective medical evidence, other factors that the ALJ will consider include Plaintiff's daily activities; the location, duration, frequency, and intensity of their pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken; treatment; and any other measures used to relieve symptoms. See id. The ALJ may also consider inconsistencies between Plaintiff's statements regarding pain and the medical evidence. See 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); SSR 16-3p.

### 2. The ALJ's findings

The ALJ acknowledged that Plaintiff alleged "his IBS can keep him in the bathroom for 45 minutes to an hour at a time." (AR 20.) He then summarized Plaintiff's IBS medical record as follows:

> [T]reatment notes from Veterans Affairs indicated that the claimant's abdominal discomfort was associated with PTSD and anxiety. . . . [I]t was noted that "the patient is also having significant somatic symptoms that are likely anxiety related, such as symptoms consistent with irritable bowel syndrome." He was not on continuous medication for any intestinal conditions and has not received any surgical treatment for an intestinal condition. Moreover, despite the claimant's reports of GERD and IBS, there was no evidence of weight loss, malnutrition, or serious complications noted (7F/5, 10F/7, 14F/8). The claimant's medications appeared effective in treating his symptoms (8F/10-11, 12F).

(AR 22.) Although the ALJ found that "the medical evidence of record does not corroborate the severity of the symptoms alleged by the claimant[,]" the RFC addresses Plaintiff's IBS by listing "convenient restroom access" as a requirement. (AR 26.)

### 3. Analysis

The ALJ makes a general statement that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 21-22.) This statement refers to the preceding paragraph, which describes Plaintiff's subjective symptom testimony, including "that his IBS can keep him

1 in the bathroom for 45 minutes to an hour at a time." (AR 21.) Accordingly, the Court
2 finds that the ALJ intended to discredit this allegation. However, whether the ALJ
3 properly discredited Plaintiff's allegations is the next inquiry.

4        Before the ALJ discredits a claimant's subjective symptom testimony, they must
5 first determine if objective medical evidence of an underlying impairment "could
6 reasonably be expected to produce the pain or other symptoms alleged." Trevizo, 871
7 F.3d at 678. The ALJ found this was the case. (AR 21.) The second step is for the ALJ to
8 describe specific, clear, and convincing reasons to reject the claimant's testimony on the
9 severity of his symptoms. Trevizo, 871 F.3d at 678. The Court finds that the ALJ failed to
10 do so here.

11        First, the ALJ does not explain how the medical evidence contradicts Plaintiff's
12 alleged need to use the restroom for forty-five to sixty minutes. While the Court may be
13 able to draw inferences about what testimony is inconsistent, the ALJ must identify
14 those inconsistencies with specificity. Lambert, 980 F.3d at 1278 (citing Brown-Hunter,
15 806 F.3d at 494) ("Although the inconsistencies identified by the district court could be
16 reasonable inferences drawn from the ALJ's summary of the evidence, the credibility
17 determination is exclusively the ALJ's to make," and the reviewing court is "constrained
18 to review the reasons the ALJ asserts.").

19        In any case, even if the Court made inferences of the ALJ's reasoning, the
20 summary of Plaintiff's IBS medical history does not appear to necessarily negate or
21 support Plaintiff's testimony. The ALJ seems to imply that, because Plaintiff's IBS is
22 more related to his anxiety and does not appear to have much of a physiological impact,
23 Plaintiff's testimony is less credible. However, the fact that Plaintiff's IBS may be
24 anxiety-induced, does not make his claim that he needs to use the restroom for forty-
25 five to sixty minutes at a time more or less likely. The absence of medical evidence,
26 alone, is not enough to discredit Plaintiff's testimony. See e.g., Bunnell v. Sullivan, 947
27 F.2d 341, 346–347 (9th Cir. 1991) (holding that "the adjudicator may not discredit a
28 claimant's testimony of pain and deny disability benefits solely because the degree of

pain alleged by the claimant is not supported by objective medical evidence"). Accordingly, the ALJ's assessment of Plaintiff's testimony regarding his bathroom usage is not clear and convincing. The Court finds that the ALJ improperly rejected Plaintiff's subjective testimony.

This error was not harmless. As illustrated in the previous section, the ALJ's failure to provide clear and convincing reasons for discounting Plaintiff's pain testimony "precludes us from conducting a meaningful review." See Brown-Hunter, 806 F.3d at 489. On remand, the ALJ should reevaluate Plaintiff's symptom testimony and specifically identify which portions of it, if any, the ALJ finds not credible and why.

## VI.    CONCLUSION

The reviewing court may enter a "judgment affirming, modifying, or reversing" the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the case to the Social Security Administration for further proceedings. Id.

The Court finds that remand for further proceedings is warranted because additional administrative proceedings could remedy the defects in the ALJ's decision. See Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). Therefore, the Court **ORDERS** that judgment be entered **REVERSING** the decision of the Commissioner and **REMANDING** this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated: September 23, 2024

Honorable Michael S. Berg
United States Magistrate Judge